Yes, good morning. Yes, I'm going to begin with the procedural history of this case, which may be a little bit lengthy, but I'll keep it simple. Well, we're familiar with the procedural history, so why don't you just tell us why your client should prevail? Okay, yeah, sure. Thank you. Petitioner is a native and citizen of China who is 39 years old. In her prior assignment application, she claimed she was persecuted because her classmate left a bag of Christian materials in her home. And about one week later, that was back in 2007, and one week later, you know, Chinese police came to her home, arrested her, and kept her in police detention. She was not... Is that issue in this case? I thought the question of her sort of imputed religion was out of the case at this point. I think the issue of this case is, you know, whether she has established a burden of proof to establish a well-founded fear, a future fear based on her Christianity claim, based on her recent conversion to Christianity. I think that she has met the burden of proof. I think what happened, you know, back in the individual hearing in San Francisco, the interpreter was not able to translate the word, the church's name, from Chinese to the English word. Let me bring the court's attention to Certified Administrative Record, page 145, line 17 through line 20. And she stated the name of the church she attended is Xilouya, X-I-L-O-U-Y-A, and she was able to say the name of the church. However, it was the interpreter who did not understand the word of that particular phrase, which ultimately lead to the court to conclude that she provided nonsensical word to the church's name. Are you mentioning this because of the adverse credibility finding? Right, right, right, yeah. But the BIA didn't rely on the adverse credibility finding, correct? I think that one more thing, you know, not only that, you know, I think that has weakened her case, you know, because the lack of the translation had weakened her case, leading the judge to conclude that she has not met her burden of proof. You know, assuming, you know, the interpreter did everything correctly. Well, I think the reason I didn't think she had met the burden of proof, at least as far as before us, is that she's basically saying, I think I will be persecuted if I go back and join one of these house churches. But what evidence did she provide as to whether there's house churches in the province, in this particular province where she's from, and how those house churches are treated? Well, she did not have any document to prove that, you know, of course. And I think what the courts failed to recognize that coupled with her prior arrest and detention, and also her payment of fines. Her prior arrest and detention had nothing to do with this, because she wasn't a Christian at the time, and she wasn't claiming to be, right? For that, I have to respectfully, I had to respectfully disagree with that. I think it has something to do with her future persecution, and her current Christianity involvement, coupled with her prior arrest, coupled with her police, the police officer wanting to arrest her. You know, I think all together, you know, she'll be able to establish that she'll be arrested. Do you have any, are you going to discuss at all her third claim or her second claim, which is her concern about returning with her two children, whether she wants to have another child, and so on? With regard to one-child policy in China, I'm going to rest everything on the record. I probably am not going to make any argument to her future forcible sterilization case. One of the things she had said was that there's some, there's the testimony, there's varying testimony as to whether or not she thought she might want to have another child. You know, it's been almost 10 years. Do you know if she's had a third child? No, I don't know anything about that. You know, for that one, you know, I did not inquire whether she had a third child or not, Judge. Well, what is her view on whether she wanted to have another child? Because the government can address this when it speaks. But the way the BIA framed it is that she does not want to have more children, but it seemed that she did testify at one point that she did. You know, even if she doesn't have the third child, I think she will be subject to sterilization case. You know, I mean, Chinese policy only allowed one child per family. Well, first of all, I thought just from general information and also from the record that, in fact, that's been changed. That there's a two-child policy, not a one-child policy. I think the two-child policy has been relaxed, you know, based on the records submitted. I think the latest one was 2016. And the 2016 country report probably permits a family to have two children. But it did not say, you know, after a family having two children, what will happen to the family. You know, whether China will still enforce, you know, forcible sterilization against the husband and wife. That one, that's not clear in the record. So she has two children now, as far as you know. She has two children, as far as I know, yes. What evidence in the record suggests that when she goes back, if she goes back to China, that she'll be persecuted because she has two children? I think the Chinese law say that, you know, after two children, there will be no more children after that, you know, based on the 2016 country report. The prior law was, you know, one child per family. And in 2016, the law had relaxed. I think that was somewhere in the record. But the law did not really say, you know, after two children, what will happen. You know, she's afraid of being sterilized after having two. I think that's a legitimate concern. And also, I think that, you know, she also submitted other documents, her Christianity practice and church letter. And also, again, you know, I'm going to emphasize her prior arrest. I thought that the main basis for rejecting that claim was, I mean, there was some skepticism about her actual Christianity, but that wasn't really the basis. The basis was that she hadn't proven that there was sufficient likelihood that even if she went back and went to a home church, although she didn't say there was a home church in her town, that she might be harassed or something. But there was not enough evidence that she herself would be targeted, or even that generally people who go to home churches or are not the leaders are bothered in China. Wasn't that the ultimate basis for the BIA's conclusion? Yeah, yeah, you're correct. You know, however, you know, she has been warned by police officers. She has been arrested. So this case is different than any other ordinary cases where, you know, a churchgoer simply went to church and probably nothing happened to her. But this case is different because she has imputed political opinion, not political, imputed Christian claim. And also she's a practicing Christian now. So I guess her case, you know, I think the case should be treated differently, you know, based on what happened to her and also what she's doing now. You want to save your last two minutes for rebuttal? Yes, please. Thank you. Okay. Thank you, sir. Mr. Hayes. Good morning, Your Honors. May it please the court, Timothy Hayes, on behalf of the Attorney General. The court should deny this petition. Petitioner has not established at the record compels the conclusion that she faces a reasonable possibility of persecution based on an imputed religion, her Christianity, or China's family planning policy. As for the imputed religion claim, it was waived in their brief, but the basis of it is sound in any event. She has not indicated that the police have shown any interest in her or her family since roughly 2008. And that's at 153 and 154 of the record. As for a Christianity claim, she did not establish an individualized risk of persecution based on her attempt to continue practicing Christianity in China. Her only particularized evidence presented was her husband's experiences in China when he was in China because he was a Christian at the time, but her husband did not testify or write a declaration. And his own claim in immigration court was found to lack credibility. As far as her own testimony, she provided no detailed evidence of where she would practice, how she would practice, or who she would practice with. What about the comment made that maybe there was some misunderstandings during the translation? I think that goes to the credibility, Your Honor. There was some concern, and in fact, the immigration... I mean, this was an oddity because the BIA said that they were not relying, they were assuming her truthful. But then with regard to the Christianity issue, they, without saying so, seemed to be questioning her credibility. I think they were questioning their persuasiveness of her testimony. I recognize the paragraph of the BIA decision you're discussing because they assume credibility, and then there's a paragraph below that where they sort of highlight all the issues the immigration judge found with credibility. But the board went on to discuss what I consider the crux of their holding, and that is that she didn't meet her burner of proof, even if you assume it's credible. Even if we assume that there was no problem with her attending church in the United States, she still has to establish a reasonable possibility that she would be persecuted in China attending a house church, and she just has not done that with her testimony or any other evidence. The background conditions in the record is kind of equivocal. The latest State Department report... Now, the immigration judge did take administrative notice of the 2014 report, which is similar, but at page 815 of the record, we do have the 2007 State Department report on religious practices, and that suggests that in some areas the Chinese authorities tolerate house churches, and they don't subjugate the attendees to persecution. And again, it's her burden to prove with evidence that she faces a reasonable possibility of persecution, and she just has not done that with this record. As far as her family, all her family, at least as far as her testimony suggests, they're Buddhist, and they have not had any issues in China with their religion. And then turning to the family planning policy, she has not established... There are three general things you have to establish to carry out the family planning policy. First, the burden is on the petitioner to identify the relevant local family policy applicable to them. Two, they have to show that they would be seen in violation of that policy. And three, they have to show that the violation would rise to the level of persecution. Whatever China would do to her would rise to the level of persecution. And we don't have any of those steps met. We have evidence from the 2015 trial transcript that everyone's aware that the national policy in China has changed. It's been relaxed, but we have no details as to the extent of that relaxation or how local authorities, wherever she might end up, and I'm presuming her local province would apply that. The other issue is she has two United States citizen children. Even before China changes family planning policy, there's case law after case law that shows that China doesn't necessarily view United States-born children the same way they viewed Chinese-born children. One last question after having another child, or if she went back. On that, the BIA says that she didn't say she wanted another child, but actually she did say that. Yes, Your Honor. She was equivocal in one spot, but the transcript does indicate when she was asked again, she did say yes. But I don't think that... She was equivocal in the testimony or she was equivocal in her... Her declaration.  Yes, yes, ma'am. But I recognize the part of the transcript where she did say yes, but I don't think it changes the calculus because, again, you still have to show those three things and they just have not been met in this case. I don't understand. You're saying that she didn't show that there was an applicable two-child policy, but there doesn't seem to be any doubt that if she went back and had another child, the policy would apply to her. I don't believe it would, Your Honor, because in most cases, you have to show that would apply to you and United States-citizen-born children have not been shown. The other two children just don't count, is that it? Right, right, right. Where is that in the record? It's not in the... It's actually... Let me see. Let me see. Hold on. I would have to submit it, Your Honor, in a 28-J, which I'd be happy to do. It's in one of the State Department reports. But in the matter of... One of the board opinions, too, also discusses it. I mean, it doesn't seem... I don't recall the BIA relying on it. On this particular point, you may be correct. The idea that if she were to have a third child, the Chinese government would essentially regard her as only having one because of the two U.S. citizen children not counting. I don't recall the BIA getting into that. No, they did not, Your Honor. They just essentially called the claim speculative at this point. What do we do with the part of the BIA opinion that says she has not stated that she wants more children when, in fact, she did state that she would have more children? It just seems inaccurate. It is, Your Honor. But it's harmless error on this record because there still isn't enough evidence to establish that she would face persecution returning to China, even with two United States-born children in an attempt to have a third. And the reason for that is that China won't count the first two children? Or is there some other reason for this? Well, not only do you have to show that China would count the first two children, which is one reason, but we don't know the actual policy. The burden is on the petitioner to put in the record evidence of the policy, and that is not in the record. The local policy. Yes, Your Honor, yes. We know that the national policy tolerates two, and it doesn't have any indication of what the penalty is for a third, but we definitely don't know anything about it. Given the fact that the BIA made this mistake, it didn't rely on whether or not to make any finding or make any conclusion about whether or not the policy would reply to her if she had a third child, because it said she wasn't going to have a third child. So don't we have to just remand to do it over again? A remand is an option, Your Honor, but if it's a futile exercise, it wouldn't be worthwhile for judicial or administrative efficiency. Harmless error in immigration cases is exceedingly rare, right? I mean, it has to be just obvious. And I mean, you're trying to patch together from pieces that the policy wouldn't apply to her, but the BIA never confronted that question because it had the wrong facts. Well, the policy would have to apply to her with the evidence in the record, and we don't have that evidence in the record. So even if the board had not stated inaccurately that fact, I think the result would still be the same. Unless Your Honors have any other questions, I will rest. Okay, it appears not. Thank you, Mr. Hayes. We'll hear rebuttal. Sir, can you unmute yourself so that we can hear you? Yeah, yeah, I'm doing it, yeah. Thank you. Thank you, Judge. There are two policies. One is national policy, and the other one is local policy with regard to whether the two U.S.-born children should be treated as Chinese citizens or not. And we don't have any record of the local policy. And I think the case is worth remanding to the BIA and to IJ to determine what the local policy was. But whose burden was that to put on the local policy? Are you saying it wasn't yours? Well, see, no, it is ours. But I think Mr. Hayes was saying that there are two systems, there are two policies. And my understanding is that the Chinese policy, the national policy treats the two U.S.-born children as her children once upon her return to China. And, you know, she's having two children. I think she's subject to forcible sterilization based on then current Chinese law of 2016. And, you know, she said that, you know, she was fearful of being sterilized. So where is it in the record that the U.S. citizen children would either just themselves or a third child be counted and lead to sterilization? Yeah, we don't have any record how the children will be counted. Whether, you know, the U.S. Well, if you don't have a record, isn't that your problem? We don't have any record saying that the two is, the court cannot be speculative as to, you know, and cannot make speculative finding that the two children will be counted as U.S. citizen upon her return to China. Right, but I mean, looking at the BIA decision, under the line in which we're having questions about, about that's inaccurate, there is another line that says that the evidence does not establish a policy of forced sterilization of parents who returned to China with children who were born outside of that country. So is that getting at the point we're talking about here? Well, I think the BIA is wrong here. And, you know, BIA just misapplied the fact. And, you know, there's no record that the two children will be counted as U.S. citizen. I think the BIA is, you know, committed an error. The BIA is relying on the IJ's decision on page 12, where it says the record contains no information on the treatment of children beyond the quota who are born outside of China. And so, and I think you agree that it's your responsibility, your client's responsibility to put something in the record about that. So point to where in the record that is at. I think that if there is no record showing that two children will be treated as the U.S. citizen, and, you know, nobody can make a speculative finding, and the finding should be, you know, the children should be counted as two Chinese citizen upon her return. Okay, we've taken you over your allotted time. Let me see if there's additional questions from my colleagues. That does not appear so. Mr. Wang, I want to thank you for your argument. Mr. Hayes, thank you as well. We appreciate the arguments this morning, and this case is submitted. Can I, I just want to say one thing in general. The court now has a policy that people are supposed to appear for argument in person. Neither of you did. And I would, you had reasons which were essentially, as I recall, it's a pain. We don't want to come. And I think we're going to be stricter about these things in the future. So please do plan to appear. Thank you. Thank you so much. Thank you, Judge. Thank you, Judge Berzon. Okay, this matter is submitted. We'll ask counsel for our second case to please come up.
judges: BERZON, BRESS, VANDYKE